UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

JORGE NAVARETTE-LEIVA,

Petitioner,

v.

CHRISTOPHER CHESTNUT, in his official capacity, Warden of California City Detention Facility, et al.,

Respondents.

No. 1:26-cv-03966-DJC-SCR

ORDER

Petitioner Jorge Navarrete-Leiva, a noncitizen, has filed a Petition for Writ of Habeas Corpus to remedy his allegedly unlawful detention by Respondents. He seeks immediate release, or alternatively, a bond hearing. The Court informed the parties that it intended to rule on the merits. (ECF No. 4.) For the reasons explained below, the Petition is GRANTED as to Count 1.

Petitioner entered the United States on or about February 22, 2023, and was immediately detained by the U.S. Border Patrol and processed for expedited removal. He has been detained continuously since that time for more than 39 months and has never received a bond hearing.

Respondents argue Petitioner's detention is constitutionally permissible under 8 U.S.C. § 1225(b)(1), which provides for mandatory detention and expedited removal. Petitioner disputes whether § 1225(b)(1) is the proper statutory framework and further contends his detention violates the Constitution's Due Process Clause.

Petitioner's Due Process claim is similar to ones this Court has already addressed. This Court has previously joined other districts in concluding that the unreasonably prolonged detention of individuals under section 1225(b) without a bond hearing can violate the Due Process Clause. *See Mohammed v. Warden of Cal. City Det. Ctr.*, No. 1:26-cv-00118-DJC-CSK, 2026 WL 192368 (E.D. Cal. Jan. 26, 2026); *see also Choudhary v. Chestnut*, No. 1:26-cv-01770-DJC-CKD, 2026 WL 816711 (E.D. Cal. Mar. 24, 2026). "[E]ssentially all district courts that have considered the issue agree that prolonged mandatory detention pending removal proceedings, without a bond hearing, 'will—at some point—violate the right to due process.'" *Martinez v. Clark*, No. 2:18-cv-01669-RAJ, 2019 WL 5968089, at *6 (W.D. Wash. May 23, 2019) (citation omitted), *report and recommendation adopted* 2019 WL 5962685 (W.D. Wash. Nov. 13, 2019). Respondents' reliance on *Demore v. Kim* is distinguishable. Respondents assert "that immigration detention can be constitutional even in the absence of any showing that an individual detainee posed a flight risk or a danger to the community." (Resp. at 6 (citing *Demore*, 538 U.S. 510, 523–27 (Apr. 29, 2003)).) But in concluding that mandatory detention during removal proceedings is constitutionally permissible, the *Demore* court was careful to explain that such detention should be for a "limited period" and that, under the statute it was considering, most removal proceedings were concluded within a matter of a few months. 538 U.S. at 529. Petitioner's detention of 39 months is materially distinguishable, thus, *Demore*'s holding is of limited assistance.

To determine if Petitioner's due process rights have been violated, the Court must answer two questions: "the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures

necessary to ensure any deprivation of that protected liberty interest accords with the Constitution." *Garcia v. Andrews*, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *2 (E.D. Cal. Jul. 14, 2025).

Petitioner has a clear liberty interest in his freedom from detention. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001). Petitioner has been detained for 39 months while his case has gone through lengthy proceedings before an Immigration Judge, the Board of Immigration Appeals, and the Ninth Circuit where a petition for review of a final order of removal remains pending. As Petitioner's detention will continue even longer than 39 months, he has a clear liberty interest. *See Zadvydas*, 533 U.S. at 690, 693.

The Court next determines whether Petitioner is entitled to due process under the Constitution and the nature of that process. Respondents urge the Court to apply the 3-factor *Lopez* test rather than the *Mathews* or *Banda* tests. The Court will apply the *Banda* test as it most thoroughly explores the varying interests at stake. Under the *Banda* test, courts in this Circuit weigh the following factors to ascertain when prolonged detention violates the Due Process Clause: "(1) the total length of detention to date; (2) the likely duration of future detention; (3) the conditions of detention; (4) delays in the removal proceedings caused by the detainee; (5) delays in the removal proceedings caused by the government; and (6) the likelihood that the removal proceedings will result in a final order of removal." *Banda v. McAleenan*, 385 F. Supp. 3d 1099, 1118 (W.D. Wash. 2019); *see, e.g., Sandesh v. LaRose*, No. 3:26-cv-00846-JES-DDL, 2026 WL 622690, at *3 (S.D. Cal. Mar. 5, 2026) (finding "it most appropriate to apply the *Banda* test to Petitioner's detention here under § 1225(b), as other courts within this district have done in the past" and collecting cases).

First, the length of detention, which is "the most important factor," weighs in Petitioner's favor as Petitioner has been detained for 39 months. Compared to the presumptive six-month period in *Zadvydas* beyond which continued detention

becomes prolonged, 39 months is indisputably prolonged. *Zadvydas*, 533 U.S. at 701. Respondents insist removal proceedings have "proceeded apace and the timeline remains reasonable[,]" and urge this factor to be credited in their favor. (Resp. at 10.) But given the length of time, which greatly exceeds the "limited period" of five months discussed above in *Demore* and the six-month presumptive period in *Zadvydas*, 39 months is indisputably lengthy. *See also Prieto-Romero v. Clark*, 534 F.3d 1053, 1062 (9th Cir. 2008) (concluding that a "more than three-year detention certainly qualifies as prolonged by any measure").

The second factor requires consideration of "how long the detention is likely to continue absent judicial intervention; in other words, the anticipated duration of all removal proceedings including administrative and judicial appeals." *Martinez*, 2019 WL 5968089, at *9. After surveying the lengthy litigation history of this case, Respondents assert removal litigation "has nearly reached its endpoint" because oral arguments will take place in November at the Ninth Circuit and the court will "likely" issue a decision shortly thereafter and resolve Petitioner's claim challenging his final order of removal. (Resp. at 10.) With this endpoint in sight, Respondents contend that Petitioner's remaining time in detention is limited. (*Id.*) While issuance of the Ninth Circuit's order could come reasonably quickly, it could also take several months to receive a decision following oral argument. Additionally, the Ninth Circuit may remand the case to the BIA rather than affirm the underlying final order of removal. The Court finds that this factor weighs at least slightly in Petitioner's favor. *See Hong v. Mayorkas*, No. 2:20-cv-01784-LK, 2022 WL 1078627, at *7 (W.D. Wash. Apr. 11, 2022) (noting that oral argument was scheduled, which weighed "slightly" in Petitioner's favor); *Leaupepetele v. ICE Field Office Dir.*, No. 2:21-cv-961-RJB-DWC, 2021 WL 5450790, at *5 (W.D. Wash. Nov. 4, 2021) (same).

The third factor considers the conditions of the detention facility where Petitioner is detained. *Martinez*, 2019 WL 5968089, at *9. "The more that conditions under which the [noncitizen] is being held resemble penal confinement, the stronger

his argument that he is entitled to a bond hearing." *Id.* (citation omitted). Petitioner asserts that there is a lack of medical care at California City, the lights are on "24/7," he does not have enough clothes or bedding to stay warm, and he is deprived access to showers, among other allegations. (Pet. ¶¶ 38-39.) The Government does not dispute these allegations or provide contrary evidence. This factor favors Petitioner.

The fourth and fifth factors consider the nature and extent of any delays in the removal proceedings caused by Petitioner and the Government, respectively. "Petitioner is entitled to raise legitimate defenses to removal . . . and such challenges to his removal cannot undermine his claim that detention has become unreasonable." *Martinez*, 2019 WL 5968089, at *10. The Government asserts that Petitioner's requests for continuances contributed several months' delay to the removal proceedings. (Resp. at 11.) While it is correct that Petitioner sought continuances, several of these were when he was proceeding *pro se*. (*See* Resp. at 3–4 (recitation of case history).) Petitioner asserts that he was appointed counsel by the Ninth Circuit in January 9, 2026. (Pet. ¶ 28.) To the extent he had prior access to counsel during his immigration proceedings, it was limited in scope and that counsel prepared discretionary parole requests on his behalf. (Pet. ¶ 29.) As there is no allegation or appearance of bad faith, the Court finds that these actions do not significantly weigh against Petitioner. *See Masood v. Barr*, No. 3:19-cv-7623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2022); *see also Martinez*, 2019 WL 5968089, at *10 (distinguishing between "legitimate defenses" to removal, which "cannot undermine [a petitioner's] claim that detention has become unreasonable" and "dilatory" or "bad faith" tactics to "deliberately slow the proceedings."). Thus, the fourth factor favors Petitioner.

As to the fifth factor, the Court considers the delay caused by the Government. While there is no evidence of deliberate delay tactics, "[c]ontinued detention will also appear more unreasonable when the delay in proceedings was caused by the immigration court or other non-ICE government officials." *Sajous v. Decker*, No. 1:18-cv-02447-AJN, 2018 WL 2357266, at *11 (S.D.N.Y. May 23, 2018). The record reflects

a several-month delay in receiving a decision from the BIA. (*See* Resp. at 4 (BIA appeal filed August 19, 2024, and BIA decision rendered in January 2025).) To the extent any delay is caused by the immigration court and BIA's processing times, even if not intentional, this is attributable to the Government. *Martinez*, 2019 WL 5968089, at *10. Thus, this factor also favors Petitioner.

Finally, the Court considers "the likelihood the removal proceedings will result in a final order of removal." *Liban M.J. v. Sec'y of Dep't of Homeland Sec.*, 367 F. Supp. 3d 959, 965 (D. Minn. 2019). The Court declines to weigh the merits of the removal order and thus finds this factor neutral.

In sum, the majority of factors favor granting Petitioner relief. Having established Petitioner has a liberty interest and determined that his prolonged and indefinite detention warrants process, the Court finds Petitioner is entitled to a bond hearing.

**CONCLUSION**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Petitioner's Petition for Writ of Habeas Corpus (ECF No. 1) is GRANTED as to Count 1.[1]
2. Within fourteen (14) days of this Order, Petitioner shall be afforded a constitutionally adequate bond hearing before an Immigration Judge. At this hearing, the Government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have counsel present. In the event Petitioner is "determined not to be a danger to the community and not to be so great a flight risk as to require detention without bond," the Immigration Judge should consider Petitioner's financial circumstances and alternative conditions of release. *Hernandez*, 872 F.3d at 1000.

---

[1] In the interest of judicial economy, the Court declines to address the remaining grounds for relief.

3. The Clerk of Court is directed to close this case and enter judgment for Petitioner. This Order resolves all pending motions.

IT IS SO ORDERED.

Dated: **July 27, 2026**

Daniel J. Calabretta

Hon. Daniel J. Calabretta
UNITED STATES DISTRICT JUDGE